# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CARLO GUGLIELMINO; BRIANT CHUN-
HOON,
          *Plaintiffs-Appellants,*

          v.

McKEE FOODS CORPORATION, A
TENNESSEE CORPORATION,
          *Defendant-Appellee.*

No. 05-16144

D.C. No.
CV-05-00620-VRW

OPINION

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, District Judge, Presiding

Argued and Submitted
August 15, 2007—San Francisco, California

Filed October 9, 2007

Before: Diarmuid F. O'Scannlain, Michael Daly Hawkins,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge O'Scannlain;
Concurrence by Judge O'Scannlain

**COUNSEL**

Edward S. Zusman, San Francisco, California, argued the cause and filed briefs for the plaintiffs-appellants. Kevin K. Eng, San Francisco, California, was also on the briefs.

William H. Pickering, Chattanooga, Tennessee, argued the cause and filed a brief for the defendant-appellee. Anthony A. Jackson, Chattanooga, Tennessee, R. Brian Dixon, San Francisco, California, and Michael Hoffman, San Francisco, California, were also on the briefs.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide the proper burden of proof to be borne by the removing defendant when plaintiffs move to remand the case to state court and their complaint alleges damages less than the jurisdictional threshold for diversity cases but does not specify a total amount in controversy.

I

Briant Chun-Hoon and Carlo Guglielmino (collectively "the Distributors") are distributors of McKee Foods' ("McKee") bakery products to retail stores. Although the precise meaning of the term "distributor" is at issue in the underlying case, roughly stated, the Distributors purchase bakery products (such as Little Debbie snack cakes) from McKee; they deliver the purchased products to local retail stores; they stock the retail shelves and are responsible for arranging, displaying and advertising the products; and they must remove from the shelves damaged goods or goods that are beyond their sell-by date. In addition, the Distributors contend that McKee requires them to buy a specific quantity of product and further makes them financially responsible for any damaged, stale, or old product.

The Distributors filed a complaint against McKee in California Superior Court on January 3, 2005, on behalf of a putative class of persons who entered into "Distributorship Agreements" with McKee. The complaint alleged that McKee had violated various wage and hour laws by treating its distributors as independent contractors instead of employees. Specifically, the complaint alleged that McKee: (1) violated California Labor Code by failing to pay its distributors overtime wages; (2) intentionally defrauded its distributors; (3) made negligent misrepresentations to its distributors; (4) breached its Distributorship Agreements and other oral and

written agreements with its distributors; and (5) violated the California Business and Professions Code by committing unlawful, unfair and fraudulent business practices against its distributors. In addition, in its sixth cause of action, the complaint sought a declaratory judgment that the distributors of McKee products are, in fact, employees of McKee and not independent contractors.

In paragraph four of the complaint, under the heading "Jurisdiction and Venue," it is alleged that "[t]he damages to each Plaintiff are less than $75,000. In addition, the sum of such damages and the value of injunctive relief sought by plaintiff in this action is less than $75,000." In its "Prayer for Relief," however, the complaint sought, among other things, damages under statutory and common law, punitive and exemplary damages (as to the fraud count), an accounting of other moneys due to plaintiffs, attorneys' fees, payments of back taxes and benefits, a declaration of the respective rights and obligations of the distributors and of McKee, an injunction prohibiting McKee's unfair business practices, and such other relief as the Court deemed proper.

On February 10, 2005, McKee filed a notice of removal to the United District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1441 and 1332. The removal notice stated that "[a]lthough the Complaint affirmatively attempts to allege that the damages suffered by each Plaintiff are less than $75,000.00 . . . , the categories of damages actually claimed by Plaintiffs, if recoverable, would be significantly in excess of the $75,000.00 minimum amount in controversy (exclusive of interest and costs) required to invoke diversity jurisdiction." The notice of removal attempted to calculate the damages suffered by the Distributors and concluded that economic damages for Hoon would total roughly $76,000 (without including attorneys' fees, back taxes, or punitive damages), and that for Guglielmino separately, economic damages (prior to including attorneys' fees, back taxes, or punitive damages) would total roughly

$150,000. Thus, McKee's calculations purported to show an amount in controversy sufficient to invoke federal jurisdiction.

On March 14, 2005, the Distributors filed a motion under 28 U.S.C. § 1447 for an order remanding the action to state court. Although they did not dispute that the plaintiffs were diverse from McKee, they challenged McKee's calculations of the amount in controversy and sought to show that less than $75,000 was at stake. Hoon and Guglielmino each also filed affidavits stating: "I am not seeking damages in excess of $75,000."

The district court, Chief Judge Vaughn Walker presiding, issued an order denying the Distributors' motion to remand on May 3, 2005. The order explained that there were three possible standards for the removing defendant's burden of proof: (1) that the plaintiff "might recover" in excess of the jurisdictional amount; (2) that the plaintiff is "more likely than not to recover" in excess of the jurisdictional amount (the "preponderance of the evidence standard"); and (3) that the plaintiff is "legally certain to recover" in excess of the jurisdictional amount. The order also explained that no Ninth Circuit precedent was directly on point, because the complaint specified that damages were below the jurisdictional threshold yet did not demand a specific amount. Ultimately, the district court decided that the "preponderance of the evidence" standard should be applied: the defendant has the burden to show that the allegations in the complaint set forth an amount in controversy that is "more likely than not" greater than $75,000. Applying such standard, when (1) economic damages were accounted for, (2) attorneys' fees (measured by a "conservative" estimate of 12.5% of economic damages) were added, and (3) punitive damages ("conservatively estimated" at a 1:1 ratio to economic damages) were added, the district court determined that the amount in controversy for both plaintiffs was in excess of the jurisdictional threshold.

The district court's order was "quick to note" that if the more stringent "legal certainty" test was applied, then McKee would not have carried its burden.[1] It reached this conclusion because it could not be certain that plaintiffs would recover *any* attorneys' fees or punitive damages. Therefore, because it determined that a question of law — namely the burden of proof standard — was dispositive of the remand motion, and because it felt that resolution of the question might "substantially advance the termination of the litigation," the district court certified its order for interlocutory review pursuant to 28 U.S.C. § 1292(b).

Thereafter, and within the ten days provided by 28 U.S.C. § 1292(b), Guglielmino petitioned this Court for permission to pursue an interlocutory appeal, which we granted.

## II

### A

[1] The question certified for interlocutory review is "[w]hat is defendant's burden of proof when plaintiffs move to remand pursuant to 28 U.S.C. § 1447(c) and their state-court complaint specifies that their damages are less than the jurisdictional requirement?"

As Chief Judge Walker may have anticipated, we have identified at least three different burdens of proof which might be placed on a removing defendant under varying circumstances. In *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996), we noted that when a complaint filed in state court alleges on its face an amount in controversy suffi-

---

[1]The district court noted that the "legal certainty" test had been applied in a similar, though slightly distinguishable, factual circumstance by the Eleventh Circuit. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092 (1994). It deemed the legal question "sufficiently close" and "determinative" that it decided to certify the question for interlocutory appeal.

cient to meet the federal jurisdictional threshold, such requirement is presumptively satisfied unless it appears to a "legal certainty" that the plaintiff cannot actually recover that amount. *Id.* at 402 (discussing *Garza v. Bettcher Indus., Inc.*, 752 F. Supp. 753, 755-56 (E.D. Mich. 1990); *see also St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (stating that when a complaint filed pleads *more* than the jurisdictional amount "the sum claimed by the plaintiff controls if the claim is apparently made in good faith" and that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal").

The second situation we have identified is where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled. In such a circumstance, we apply a preponderance of the evidence standard. *Sanchez*, 102 F.3d at 404 ("[T]he removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount."). We have since applied the preponderance holding in *Sanchez* to complaints filed under the Class Action Fairness Act ("CAFA") that do not specify a particular amount in controversy. *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006) (per curiam).[2]

Finally, in our recent decision in *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994 (9th Cir. 2007), we held in the CAFA context that when a state-court complaint affirmatively

---

[2]In *Abrego Abrego*, we noted that if "the complaint alleges damages of less than the jurisdictional amount, 'more difficult problems are presented,' as to which there is no binding precedent in this circuit." *Id.* at 683 n.8 (quoting 14C Charles Alan Wright et al., Federal Practice and Procedure § 3725, at 84).

alleges that the amount in controversy is less than the jurisdictional threshold, the "party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." *Id.* at 1000.[3] Two animating principles informed our judgment in *Lowdermilk*. The first is that federal courts are courts of limited jurisdiction which we will strictly construe. *Id.* at 998. The second principle is that the plaintiff is "master of her complaint" and can plead to avoid federal jurisdiction. *Id.* at 998-99. Thus, in *Lowdermilk*, by adopting "legal certainty" as the standard of proof, "we guard[ed] the presumption against federal jurisdiction and preserve[d] the plaintiff's prerogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court." *Id.* at 999.

**[2]** Therefore, because we have recognized varying burdens of proof depending on the situation and the nature of the plaintiff's complaint, we must as a threshold matter determine precisely what Guglielmino's complaint alleged.

### B

The complaint in this case is hardly a paragon of clarity. In the Jurisdiction and Venue section, it is alleged that "[t]he

---

[3]McKee contends that *Lowdermilk*'s "legal certainty" standard applies only in the CAFA context. It points out that CAFA has discarded the rule — still applicable in traditional diversity settings such as this case — that closes the removal period one year after a complaint is filed. *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(b) shall not apply."). We acknowledge that the one-year removal period presents a significant potential for "gamesmanship" in that a plaintiff can wait until the removal period has closed and then amend their complaint to seek higher damages. *See Lowdermilk*, 479 F.3d at 1002 (noting that "CAFA mitigates some of the potential for [pleading] abuse by eliminating the one-year removal limitation."). Whether CAFA's elimination of the closure period is a sufficient distinguishing characteristic of those causes of action to justify a different burden of proof, and whether *Lowdermilk* itself can be read so narrowly, are questions that we leave for another day and another court.

damages to each Plaintiff are less than $75,000. In addition, the sum of such damages and the value of injunctive relief sought by plaintiff in this action is less than $75,000." In the complaint's Prayer for Relief, however, no mention is made of a total dollar amount in controversy. Instead, the complaint seeks: (1) an Order certifying this action as a class action; (2) damages under statutory and common law; (3) punitive and exemplary damages; (4) an accounting of moneys due to the plaintiffs; (5) attorneys' fees and costs; (6) payment of back taxes and benefits; (7) notice of the right to recission and restitution to similarly situated distributors; (8) a declaration of the rights and obligations between the distributor-class and McKee; (9) an injunction prohibiting further unfair business practices by McKee; (10) pre-judgment interest; (11) the costs of suit; and (12) "such other and further relief as this Court deems just and proper."

Even if we assume that relief in the form of common law and statutory damages, exemplary and punitive damages, recission and restitution, a declaratory judgment, and an injunction prohibiting further unfair business practices constitutes a "sum . . . less than $75,000," that is not all that the complaint seeks. Section 1332(a)'s amount-in-controversy requirement excludes only "interest and costs" and therefore includes attorneys' fees. Indeed, the Distributors' complaint seeks attorneys' fees claimed to be authorized pursuant to California Code of Civil Procedure sections 1021.5 and 1036, Civil Code 1780(d), and relevant sections of the Labor Code. *Lowdermilk*, 479 F.3d at 1000 ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.") (quoting *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)).[4]

---

[4]There was dispute in *Lowdermilk* between the majority and dissent whether the complaint included attorneys' fees within its allegation that the total amount claimed was less than CAFA's $5 million jurisdictional threshold. The complaint in *Lowdermilk* apparently read " 'THE AGGRE-

**[3]** Beyond attorneys' fees, the complaint also seeks the back payment of health benefits and taxes as well as an accounting of moneys due to the Distributors and other similarly situated class members. Although these allegations seek payment of sums from McKee, they do not fall comfortably within the realm of "damages" and are not labeled as such in the Prayer for Relief. Nonetheless, because the recovery of these sums would entail a payment by McKee, we are convinced that they must be included within any amount-in-controversy calculation. *See Ridder Bros. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) (holding that for purposes of calculating amount in controversy, "[t]he value of the thing sought to be accomplished by the action may relate to either or any party to the action") (internal quotation omitted)).

**[4]** Thus, because the allegation in the Jurisdiction and Venue section is not repeated in the Prayer for Relief and does not take account of attorneys' fees, accounting of moneys, or payment of back taxes and benefits, the complaint fails to allege a sufficiently specific total amount in controversy. The uncertainty which is inherent in the Distributors' Prayer for Relief places this case within the *Sanchez* line of cases, and we therefore apply the preponderance of the evidence burden of proof to the removing defendant. *Sanchez*, 102 F.3d at 404.

### III

**[5]** The district court applied a preponderance of the evidence standard and determined that, "conservatively estimat-

GATE OF CLAIMS DOES NOT EXCEED 5 MILLION DOLLARS . . . In paragraph 4, under a heading 'JURISDICTION AND VENUE,' it says the '[t]he aggregate total of the claims pled herein do [sic] not exceed five million dollars.' " 479 F.3d at 1003 (Kleinfeld, J., dissenting) (quoting the complaint). The majority obviously read these sections of the complaint, and their reference to "aggregate total of claims," to include *everything* sought, including attorneys' fees. In contrast, here the complaint does not use the word "claim" but instead references only "damages and injunctive relief," within neither of which attorneys' fees comfortably fit.

ed," *both* named plaintiffs' allegations met the requisite $75,000 amount-in-controversy threshold. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 559 (2005) (holding that when a well-pleaded complaint contains "at least one" claim that satisfies the amount-in-controversy requirement, supplemental jurisdiction may be exercised over the claims of other parties). The Distributors do not challenge the district court's factual findings on appeal that under the preponderance standard, this case was properly removed to federal court. We therefore see no need to address any argument that the district court's calculations were clearly erroneous.

**[6]** Accordingly, because the Distributors' complaint is unclear and does not specify "a total amount in controversy," the proper burden of proof in this case is proof by a preponderance of the evidence. Because that is the standard the district court applied in denying the motion to remand this case to state court, the judgment of the district court is

**AFFIRMED.**

---

O'SCANNLAIN, Circuit Judge, specially concurring:

While we have faithfully applied our precedents to resolve the case before us, I write this special concurrence to note my difficulty with the varied and inconsistent burdens of proof that we place upon defendants who seek to exercise their statutory right of removal under 28 U.S.C. § 1441. In particular, I disagree with the imposition of a "legal certainty" burden on a party seeking to *invoke* federal jurisdiction, rather than seeking to defeat it. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). In my view, in all cases where removal to federal court is challenged in any appropriate way, it is incumbent upon the party seeking federal jurisdiction to prove the *facts* giving rise to such jurisdiction by a preponderance of the evidence. *See McNutt v.*

*General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Only then, and only by proof to a legal certainty, can a party *defeat* the exercise of federal jurisdiction which those established facts support. If we had applied such a uniform rule, this would be an easy case that would not be here on interlocutory appeal.

I

A

Based on my view that a uniform burden of proof is required, I find myself in respectful disagreement with our holding in *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007), that, at least in the context of the Class Action Fairness Act ("CAFA") and perhaps beyond, when a plaintiff alleges a specific amount in controversy *less than* the jurisdictional threshold, a removing defendant must prove to a "legal certainty" that the threshold is not exceeded. In my view, this test—which inverts the "legal certainty" test of *St. Paul Mercury*, 303 U.S. at 288-89, by placing such burden on the party seeking to *assert* rather than *defeat* federal jurisdiction—places too high a barrier in the path of defendants seeking to remove a case which it believes belongs in federal court.

In my view, the preponderance of the evidence standard should apply in any case where there is a challenge to the jurisdictional facts of the party seeking to assert federal jurisdiction. This rule is followed in the Fifth, Sixth, Seventh and Eighth Circuits. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411 (5th Cir. 1995); *Rogers v. Wal-Mart Stores, Inc.,* 230 F.3d 868, 871 (6th Cir. 2000) (relying upon *Gafford v. General Elec. Co.*, 997 F.2d 150 (6th Cir. 1993)); *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006); *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003).

In *De Aguilar*, "the plaintiffs, in a bold effort to avoid federal court . . . specifically alleged that their respective damages will not exceed the jurisdictional amount." 47 F.3d at 1410-11. The Fifth Circuit, noting that the majority of states do not limit damage awards to the *ad damnun* amounts pled in the complaint, adopted the preponderance of the evidence test: "[T]he plaintiff's claim remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount . . . The defendant must produce evidence that establishes the actual amount in controversy exceeds [the jurisdictional amount]." *Id.* at 1412. Then, after a defendant meets this burden, removal is proper *unless* the plaintiff can show that it is legally certain that his or her recovery will not exceed the amount stated in the original complaint. *Id.* (citing *St. Paul Mercury* at 303 U.S. 288-89).

Similarly, in *Meridian*, the Seventh Circuit attempted to organize and to clarify its removal law into a coherent whole. Judge Easterbrook, writing in *Meridian*, explained that "[w]hat the proponent of jurisdiction must 'prove' is contested factual assertions . . . Jurisdiction itself is a legal conclusion, a *consequence* of facts rather than a provable 'fact.' " 441 F.3d at 540-541 (emphasis in original). The *Meridian* opinion thus emphasized that jurisdictional facts must be distinguished from jurisdictional conclusions: *contested* facts have been established only when they are proved by a preponderance of the evidence. *Id.* at 542.[1]

Concluding, Judge Easterbrook described the appropriate methodology as follows:

---

[1]In *Lowdermilk*, in adopting our "legal certainty" burden, we stated that "[t]he Seventh Circuit's decision in *Brill v. Countrywide Home Loans*, [427 F.3d 446, 448 (7th Cir. 2005)] is not to the contrary." *Lowdermilk*, 479 F.3d at 999 n.6. After the Seventh Circuit's decisions in *Meridian* and *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006), it is clear that our decision in *Lowdermilk* in fact conflicts with the Seventh Circuit's reasoning.

[A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed. Once 'jurisdictional facts' have been proved by a preponderance of the evidence standard, federal jurisdiction may be defeated only by meeting *St. Paul*'s legal certainty test.

*Id.* at 543.[2]

B

Thus, in both the Fifth and Seventh Circuits, even where the plaintiff alleges damages less than the jurisdictional amount, a preponderance of the evidence standard applies: when the facts supporting jurisdiction (*i.e.*, that a claim is worth more than $75,000) are established as more likely than not, federal jurisdiction is proper unless the "opponent" of

---

[2]Judge Easterbrook's formulation and, in particular, his explanation of the role of jurisdictional facts, finds support in older case law of our circuit. *See Uston v. Grand Resorts, Inc.*, 564 F.2d 1217, 1218 (9th Cir. 1977) (noting that the proponent of jurisdiction "ha[s] the burden of establishing the jurisdictional facts once they were challenged in an appropriate way"); *accord Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967) ("The question is one of jurisdiction, and we think that we should apply the rules laid down in *McNutt v. General Motors Acceptance Corp.*, that the trial court is not bound by the pleadings and that the *party asserting jurisdiction* has the burden of establishing it if his allegations are challenged in any appropriate manner.") (emphasis added).

federal jurisdiction can show to a legal certainty that jurisdiction is not proper.

This formulation of the respective burdens, as Judge Easterbook intimated, serves to harmonize the Supreme Court's decisions in *McNutt* and *St. Paul Mercury*.[3] It correctly places the burden of establishing the jurisdictional facts on the party seeking federal jurisdiction. It then allows the party seeking to defeat federal jurisdiction to show that, notwithstanding the proponent of jurisdiction's facts, recovery cannot exceed the jurisdictional threshold.

C

In addition to being faithful to Supreme Court precedent, the preponderance standard strikes the proper balance between a plaintiff's desire to remain in state court and a defendant's statutory right to remove. As the *De Aguilar* court noted, imposing a more stringent burden may "fail[ ] adequately to protect defendants from plaintiffs who seek to manipulate their state pleadings to avoid federal court while retaining the possibility of recovering greater damages in state court following remand."[4] 47 F.3d at 1411. Yet at the same time, the standard is not empty rhetoric: the preponderance burden "forces the defendant to do more than point to a state law that might allow the plaintiff to recover more than what

---

[3]In *McNutt*, the Supreme Court stated that "[i]f [a party's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." 298 U.S. at 189.

[4]There is little doubt in my mind that Chief Judge Walker was correct in observing that Guglielmino's disclaimer of "the jurisdictional amount is not so obviously the product of counsel's specific assessment of his client's case." Instead, "the complaint here simply maintains — almost too conveniently — that plaintiffs' damages 'are less than $75,000.' "

is pled. The defendant must produce evidence that establishes that the actual amount in controversy exceeds [the jurisdictional amount].” *Id.*; *see also McNutt*, 298 U.S. at 189 (noting that the limits of federal jurisdiction “precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure”). In this way, plaintiffs and defendants are placed on equal footing in seeking a federal courtroom.

## II

Further, there are practical concerns with *Lowdermilk*’s “legal certainty” burden. For one thing, it may put defendants in neighboring states within this circuit to different burdens of proof based on nothing more than differing state codes of pleading. Some states do not allow *any* mention of damages in state court complaints. Thus, in those states, it may never be possible to plead with the specificity required that damages are less than the jurisdictional threshold. In other words, in these states, the complaint will always be silent, triggering the less demanding preponderance of the evidence inquiry of *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996). Or, conversely stated, plaintiffs in these states will never see the benefit of *Lowdermilk*’s deferential standard. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (noting defendants’ frustration that Ariz. R. Civ. P. 8(g) bars plaintiffs from stating a dollar amount or figure for damages); *see also Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992) (discussing Nev. R. Civ. P. 8(a) which provides that “[w]here a claimant seeks damages of more than $10,000, the demand shall be for damages ‘in excess of $10,000’ without further specification of amount.”).[5]

---

[5]The Advisory Committee Note to Nev. R. Civ. P. 8(a) explains, “[i]n 1971, a restriction was inserted to prohibit allegation of specific amounts of damages in excess of $10,000. This was principally to eliminate adverse publicity that results from extravagant claims of damage, and does not restrict counsel in the presentation of their case nor the court or jury on the amount it may award.”

In my view, the availability of federal jurisdiction should not be subject to such vagaries of state pleading law. *See, e.g., Carlsberg Resources Corp. v. Cambria Sav. and Loan Ass'n*, 554 F.2d 1254, 1261 (3d Cir. 1977) (refusing to adopt a rule which "would make diversity jurisdiction, in situations such as the one at hand, largely dependent upon the vagaries of state law.").

In addition, it is unclear how the legal certainty burden is to be applied against a defendant seeking to establish federal jurisdiction. What type of proof can satisfy such a burden? The very able district judge in this case ran into this very problem when, in alternatively applying the legal certainty test, he calculated the amount of punitive damages and attorneys fees "in controversy" as zero, because "the court cannot say that plaintiffs will recover *any* particular amount of attorneys fees or punitive damages." Does this mean that punitive damages, because they are inherently speculative, will never count towards the total amount in controversy under the legal certainty burden? If not, what type of proof suffices to reach the necessary quantum of a legal certainty?[6] By inverting the *St. Paul Mercury* test and applying it against a party seeking federal jurisdiction, we raise these practical problems to which there are no easy answers.

---

[6]In the days of the *St. Paul Mercury* decision, plaintiffs could sue for less by stating an amount claimed. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 375 (9th Cir. 1997) ("At common law, a statement of the amount claimed was required, and was an upper limit on recovery.") (citing Benjamin J. Shipman, *Common Law Pleading*, 223, 487-89 (3d ed. 1923)). In most jurisdictions, however, the common law rule no longer prevails and the *ad damnum* clause does not set forth an upper limit on recovery. Nonetheless, the *St. Paul Mercury* legal certainty test might still be met by those seeking to defeat federal jurisdiction. One obvious way to meet this burden is to show that recovery under the theory alleged is capped by statute. Or, alternatively, the party might file a binding stipulation, prior to removal, that it will not seek more in recovery than the jurisdictional threshold. With the legal certainty standard inverted and projected onto those seeking to establish federal jurisdiction, such stratagems are of no help or comfort.

## III

If our court applied a single, consistent burden of proof which a removing defendant must confront, this interlocutory appeal would never have been certified. The preponderance of the evidence standard strikes the correct balance between a plaintiff's right to remain in state court and a defendant's statutory right to remove an action which meets the diversity requirements. In my view, yet recognizing that binding circuit precedent is to the contrary, such a preponderance standard should be applied in all cases where the jurisdictional facts of the party seeking to invoke federal jurisdiction have been properly challenged.